IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DANIELLE ANITRAS GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-041-RAW-KEW |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Danielle Anitras Graves (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 4, 1975 and was 39 years old at the time of the ALJ's latest decision. Claimant completed her high school education. She also completed a secretarial program at a vocation school and attended one year of college. Claimant has worked in the past as a bus attendant, cashier, sales clerk,

counter helper, customer service clerk, factory worker, motel clerk, and photographer. Claimant alleges an inability to work beginning March 1, 2007 due to limitations resulting from heart problems, high blood pressure, and diabetes.

**Procedural History**

On April 18, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") John W. Belcher issued an unfavorable ruling on August 19, 2009. Claimant appealed to this Court and the case was reversed and remanded for further proceedings on September 12, 2012.

On remand, the ALJ conducted an additional administrative hearing on May 30, 2013. He determined that Claimant should be sent for a neuropsychological evaluation with testing. On July 31, 2014, the ALJ conducted a video hearing to take testimony from the neuropsychologist, Dr. John Hickman and to take testimony from the vocational expert.

On October 17, 2014, the ALJ issued a second unfavorable decision. Claimant declined to file objections with the Appeals

4

Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform less than a full range of sedentary work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to consider all of the medical evidence, substituted his lay opinion as evidence, and failed to provide Claimant with a full and fair *de novo* review of the record on remand; (2) failing to give legitimate reasons for rejecting the opinion of Dr. Hickman; (3) failing to give legitimate reasons for rejecting Dr. Vaught's testing; (4) failing to give legitimate reasons for rejecting the opinions of the treating psychiatrist; and (5) failing to give legitimate reasons for rejecting the opinions of the treating cardiologist.

**Consideration of the Medical Evidence**

In his decision, the ALJ determined Claimant suffered from the severe impairments of coronary artery disease status post closure of a ventricle septal defect at five months of age and two vessel

coronary artery bypass graft in 2007; obesity; diabetes mellitus; sleep apnea; affective disorder; anxiety disorder; and cognitive disorder. (Tr. 573). The ALJ concluded that Claimant retained the RFC to perform less than a full range of sedentary work. In so doing, the ALJ found Claimant could lift, push, or pull up to 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk two hours in an eight hour workday; and sit for six hours in an eight hour workday. Claimant required the ability to change positions at will but could remain at her work station. Claimant could occasionally climb stairs and ramps, but never ladders, ropes, or scaffolding. Claimant could occasionally balance, bend, or stoop, kneel, crouch, or crawl. The ALJ determined Claimant should avoid all exposure to hazardous or fast machinery, unprotected heights and driving. Claimant was limited to simple tasks with only superficial contact with co-workers, supervisors, and the public. (Tr. 577). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of clerical mailer, assembler, and trimmer. (Tr. 587). As a result, the ALJ found Claimant was not disabled from March 1, 2007 through the date of the decision. Id.

Because the remaining arguments put forth by Claimant flow from the consideration if the medical opinion evidence, this Court

begins with a review of the ALJ's consideration of the opinion evidence. Claimant contends the ALJ improperly rejected the opinion of Dr. John W. Hickman without providing sufficient justification for doing so. The ALJ took testimony from Dr. Hickman to interpret and provide an opinion on the testing performed by Dr. Larry Vaught on remand.

Dr. Vaught provided a written report based upon his evaluation of Claimant's mental condition on August 15, 2013. He diagnosed Claimant with a Cognitive Disorder, NOS, mild to moderate and Major Depressive Disorder, recurrent, moderate without psychotic features. (Tr. 1390). Claimant demonstrated a verbal IQ of 75, a performance IQ of 85 and a full scale IQ of 79 which placed her in the borderline range. (Tr. 1387).

Dr. Hickman was called upon by the ALJ to interpret these results with a view toward determining whether Claimant met a listing. Dr. Hickman described the physical problems experienced by Claimant, including cardiac problems, high blood pressure, and sleep apnea. (Tr. 618). Dr. Hickman noted from Dr. Vaught's results that Claimant was markedly impaired in immediate auditory memory. (Tr. 620). He found moderate restrictions to activities of daily living, marked limitations in her ability to maintain social functioning, marked limitations in Claimant's concentration,

7

persistence, or pace. He found Claimant was experiencing almost daily deterioration levels in functioning since 2007 but had not had any consistent hospitalizations. (Tr. 621). The ALJ and Dr. Hickman discussed the lack of progress in the criteria for mental conditions under the Social Security regulations in light of the advances in neuroscience. (Tr. 623).

Dr. Hickman opined that Claimant met two listings. (Tr. 625). The ALJ's examination then took a curious turn. Dr. Hickman stated that with Claimant's chronic pain, her concentration had been affected to which the ALJ stated

> ALJ: Yes, doctor. I hear what you're saying. But I'm not believing it because if chronic pain means you can't concentrate, then I shouldn't be working for the last 13 years.
>
> Hickman: Well, that's what the neuroscience is showing, your honor.
>
> ALJ: Yeah, there's no scale on that then, right? If you have chronic pain, then you can't concentrate. That's your testimony to me today.

(Tr. 626-27).

The examination then centers on the genetic component of whether a person's psychiatric makeup. (Tr. 627-28). The ALJ concluded that "the testimony you're providing is totally speculative in this case." Not surprisingly, Dr. Hickman disagreed stating the neuroscientific literature supported his position.

8

(Tr. 628).

Later, the examination returned to the idea that chronic pain affects a person's ability to concentrate - a notion not accepted by the ALJ:

> ALJ: And so, again, I'm asking you, is a - basically what you're telling me is that a person that has chronic pain cannot do - cannot concentrate and is therefore disabled.
>
> Hickman: I'm saying that some people or most people find chronic pain distracting, draining of their energy, and preoccupying them to the point that they have trouble sustaining concentration effort over a long period of time and you thing if you can do it, good for you. You're the exceptional person as far in my experience.
>
> ALJ: Well, I don't know. Most of people people (sic) my age seem to have chronic pain in one area or another and told me they've had pain for years and years and continue to work. So, I don't know. I guess they're working in and running a difference circle then you do.
>
> Hickman: Well, there's posted literature, your honor, on chronic pain syndrome and it all talks about the same thing. You -
>
> (Tr. 631-32).

Dr. Hickman testified that he believed Claimant met Listings 12.02, 12.04, and 12.07. (Tr. 632). Eventually, the ALJ asked Dr. Hickman to cite the medical evidence out of 52 exhibits to substantiate Claimant's belief that her conditions worsened. Dr. Hickman stated it would take several days to go through all of the evidence as many indicate Claimant's condition worsened. (Tr.

9

634). The ALJ responded:

> ALJ: Well, I guess I'll have to take several days and go through it then to find out since you can't tell me, even though that's what you're paid to do.
>
> Hickman: Well, your honor, I spend all day –
>
> ALJ: Counsel, do you have questions –
>
> Hickman: – I (sic) been sincere as far as I'm concerned. I spent all day yesterday reading these records, studying it, and reached these conclusions. If they're not acceptable to you, I'm sorry. Those were my conclusions. I do not wish to continue this hearing any longer. Goodbye.

(Tr. 634).

Dr. Hickman remained on the telephone but no further examination occurred as counsel declined to ask further questions.

In his decision, the ALJ recited Dr. Hickman's testimony in some detail but found his opinion was entitled to "little to no weight." (Tr. 574-75). The ALJ, however, failed to provide specific, legitimate reasons for finding Dr. Vaught's testing flawed or Dr. Hickman's interpretation of the results as not worthy of persuasive weight. Chapo v. Astrue, 682 F.3d 1285, 1291-92 (10th Cir. 2012). Specifically, the ALJ did not provide a basis for the rejection of Claimant's marked impairment of auditory memory found in Dr. Vaught's testing and discussed by Dr. Hickman. Moreover, this Court cannot be assured that the ALJ's personal

10

opinion based upon his personal medical condition and experience and not the objective medical evidence guided his decision. Clearly, an ALJ cannot substitute his own medical opinion for that of a medical professional. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996). The ALJ discourse with Dr. Hickman smacks of precisely such a prohibited substitution. On remand, the ALJ shall consult with an appropriate medical source in order to ascertain whether the medical evidence supports Claimant's meeting of a listing and provide specific, legitimate reasons for rejecting the medical opinion evidence of Dr. Hickman and Dr. Vaught.

### Consideration of Opinion Evidence

Claimant also contends the ALJ failed to consider or rejected the opinions of additional medical professionals. Dr. Beth Jeffries performed a mental status examination on Claimant and authored a report dated May 21, 2011. Dr. Jeffries noted Claimant appeared to have lapses in concentration, was easily frustrated which Dr. Jeffries attributed to her level of depression. She also determined that it was "as likely as not" that Claimant's symptoms of depression were interfering with her ability to socialize with others both within and out of an occupational setting. Dr. Jeffries found that Claimant had the cognitive ability to understand both simple and complex instructions. However, as the

pace and stress within the work environment increased, Dr. Jeffries believed Claimant's depressive symptoms would increase. She also believed that as Claimant's medical condition improved, her depression would also improve. (Tr. 1318).

The ALJ gave Dr. Jeffries opinion "little weight." He stated that the opinion was not consistent with the medical evidence that Claimant had only sought treatment sporadically with medication and limited counseling. (Tr. 585). The fact treatment was "sporadic" does not refute Dr. Jeffries' statements that Claimant's depression affected her concentration and ability to socialize – regardless of how sporadic the treatment might have been. Nothing in the record cited by the ALJ in rejecting Dr. Jeffries' opinion indicates that the depression did not affect these areas relevant to her ability to engage in basic work activities. On remand, the ALJ shall provide a legitimate basis for rejecting Dr. Jeffries' findings that Claimant's concentration and ability to socialize in an employment setting were adversely affected by her depression.

Claimant also contends the ALJ failed to properly assess the opinion of Dr. Charles Lester, one of Claimant's treating physicians. Dr. Lester provided a medical source statement dated July 20, 2009. He found Claimant was moderately limited in the functional areas of the ability to remember locations and work-like

procedures; ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability tot work in coordination with or proximity to others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In his narrative statement, Dr. Lester found Claimant experienced depression "which has improved with treatment." However, he found she had residual deficits with her focus, concentration, and short term memory that affects her learning and her persistence and pace. (Tr. 558-61).

The ALJ gave Dr. Lester's statement "some but not great weight", stating the longitudinal medical evidence does not support the limitations that Dr. Lester cited. Again, the ALJ cites to sporadic treatment and that medication treated the effects of her depression without addressing Dr. Lester's concern of "residual effects" from the condition after treatment. Moreover, the medical records and opinions of other rejected physicians such as Dr. Hickman support Dr. Lester's conclusions, making the assertion that

no support exists only applicable if all supporting opinions are rejected by the ALJ as has been done in this case. On remand, the ALJ shall re-evaluate Dr. Lester's opinion in light of the other reconsidered opinion evidence.

Claimant also asserts the ALJ failed to give specific and legitimate reasons for rejecting the opinion of Claimant's cardiologist, Dr. Satish Kohli. Dr. Kohli offered a medical source statement on Claimant's functional limitations. He estimated Claimant could sit for four hours in an eight hour workday, stand for two hours in and eight hour workday, and walk for one hour in an eight hour workday. She could occasionally lift/carry up to 10 pounds and could not engage in pushing and pulling or fine manipulation with her hands. She could use her feet for repetitive movements. She could also occasionally bend, squat, and crawl but never climb or reach above shoulder level. (Tr. 380). Dr. Kohli found Claimant could not work at unprotected heights, around moving machinery, be exposed to marked changes in humidity and temperature, or be exposed to dust, fumes or gases. Treatment would improve Claimant's functional ability. Dr. Kohli stated it would take six months for Claimant to achieve improvement. He restricted Claimant to sedentary activity. (Tr. 381).

In the prior remand order, this Court determined the ALJ

failed to analyze Dr. Kohli's statement under the <u>Watkins</u> rubric or provide any indication of the weight afforded the opinion. The Court also referenced the ambiguity in the statement that Claimant would improve in six months with treatment; that is, the treatment anticipated or the nature of the improvement. (Tr. 704).

The ALJ indicates that "Dr. Kohli opined the claimant would be limited (sic) sedentary work for an estimated six months." (Tr. 585). He gave Dr. Kohli's opinion "some but not controlling weight" because it was inconsistent with other substantial evidence including "multiple consultative examinations" showing Claimant was in normal limits. <u>Id</u>.

It remains that the ALJ failed to engage in the proper analysis for giving Claimant's treating physician's opinion reduced weight. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). Additionally, the ALJ still has not ascertained Dr. Kohli's intent in treatment and improvement contained on his statement. On remand, the ALJ shall proceed through the <u>Watkins</u> factor-by-factor analysis before rejecting Dr. Kohli's opinion or affording it reduced weight. Further, the ALJ shall re-contact Dr. Kohli and determine the meaning of his statement regarding the treatment necessary for Claimant's improvement and the nature and level of the improvement he

anticipates.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE